**BANKERS LIFE & LOAN ASS'N v. PIT-MAN et al.**

No. 8614.

Court of Civil Appeals of Texas.   Austin.
March 23, 1938.

Rehearing Granted in Part, and Denied in Part April 20, 1938.

J. Frank Wilson and Chris Dixie, both of Dallas, for appellant.

John A. Kerr, Jr., of LaGrange, for appellees.

BLAIR, Justice.

Appellee Mrs. Eula Pitman, joined by her husband, J. B. Pitman, sued appellant, Bankers Life & Loan Association, upon its life insurance policy covering the life of Sam S. Brown, the father of appellee, for the sum of $1,000.   A trial to the court without a jury resulted in judgment for appellee against appellant for $1,000, the face value of the policy.

Appellee alleged that Sam S. Brown was insured by the Mutual Life & Loan Association of America by its policy issued in September, 1932; that in February, 1934, the appellant in writing assumed the obligations of said policy; that during the month of November, 1934, appellant informed the insured that it desired to have all of its obligations represented by its own policy of insurance; and that without taking up or canceling the policy of the Mutual Life & Loan Association and its assumption agreement, the appellant issued and delivered to said Sam S. Brown its own policy, dated November 10, 1934, as a continuation of such insurance.

Appellant answered that the Mutual Life & Loan Association's policy and its assumption thereof were canceled by the new policy; and that it issued the new policy upon the life of the insured as alleged; but that such new policy was invalid because of fraud, concealment, or misrepresentations with regard to the health of the insured at the time the application for the new insurance policy was made by him.   Appellee replied that the

policy issued by the appellant was a continuation of the old policy and the assumption agreement; and that if such were not the case then appellant was estopped to deny such fact because of the fraudulent misrepresentations made by its duly authorized agent at the time he took the application for the new policy, to the effect that appellant company was merely trying to get insured into another and larger group; that the new policy would not in any way affect the obligation of appellant, but would be a continuation of the old insurance policy and the assumption agreement of appellant under a reclassification of age group plan; and that the new policy would be a continuation of the insurance, and insured and beneficiary named therein would have the same rights as they formerly had under the old policy and the assumption agreement; and that these representations were material, and were relied upon by insured.

The issuance and delivery of the $1,000 policy of insurance by the Mutual Life & Loan Association to Sam S. Brown, and the written assumption of it by appellant were admitted. In July, 1934, the Insurance Department of Texas notified appellant to either merge or liquidate the age group in which the Brown and other policies were carried; and in October, 1934, said department authorized appellant to issue its approved policy to the members of said group, or to discontinue the group by November 15, 1934. Accordingly, on November 2, 1934, appellant wrote appellee the following letter, formal parts omitted:

"The Bankers Life, as you are aware, assumed your policy from the Mutual Life and Loan Association under the provisions of an assumption certificate issued to you on February 28, 1934, and has continued under considerable difficulties in the face of adverse conditions.

"It has now reached the point under the new insurance laws when we must consolidate all of these old classes under one group, and under a new policy which has been approved by the Board of Insurance Commissioners. The policy is a very attractive one, and we believe you will be pleased with it.

"This action is made necessary by order of the Board of Insurance Commissioners, and the plan above outlined meets with the approval of the Insurance Department. The Board has granted us until November 15, 1934, in which to complete these transfers, and all policies not transferred at that time must be discontinued.

"In order that the whole matter may be more fully explained to you we will have a special representative call on you at a very early date, and we will appreciate any courtesies shown him. He is perfectly reliable and will come to help you.

"In issuing the order, the Board of Insurance Commissioners is endeavoring to strengthen your protection, and this action is taken in your behalf and for your benefit.

"Our special representative will explain everything fully to you, and will be glad to answer any questions.

"Assuring you of our continued co-operation and efforts to serve you in a satisfactory manner, we are."

In accordance with this letter, appellant sent its "special representative" to see appellee. He told her that he came "merely to reclassify her father into a different group of insurance, a larger group"; that it would require a new application for a new policy, which application he himself filled in by copying the information contained in the application for the policy issued by the Mutual Life & Loan Association with regard to the health or disease of the insured. Appellee further testified that: "I signed the application for father. He (appellant's representative) said this merely stood for the old certificate, and he would just fill it in from the information on the Mutual Life & Loan application." The new policy delivered upon this application was dated November 10, 1934. Appellee further testified that she did not give up the Mutual Life & Loan Association policy, nor the certificate of its assumption issued to the insured by appellant; but that she kept them with the understanding, and upon the representation of the said special representative of appellant, that the new policy would not affect the old obligation, but would be a continuation of the old insurance policy and the assumption agreement of appellant; and that such representations were relied upon by appellee. The special representative did not testify, and appellee's testimony concerning these transactions was not disputed. The new policy provided for the making of assessments as needed, and accordingly appellant assessed the insured $5.50 monthly, which appellee paid for 12 months, or for all months including October, 1935. On October 17, 1935, the in-

sured, who was then about 73 years of age, fell from the steps of his daughter's home and broke his hip. He was alone at the time and was not discovered until three or four hours after the accident; the doctors testified that he died of shock resulting from the broken hip and the long period of exposure elapsing between the time of injury and medical aid. He died on October 18, 1935, or more than 11 months after the issuance of the new policy, and more than three years after the date of the first policy.

Appellant first contends that the finding of fact and conclusion of law by the trial court, to the effect that the policy of insurance issued by the Mutual Life & Loan Association and the assumption agreement of appellant were still in force at the time of the death of the insured, were erroneous, because the alleged fraudulent representations of appellant's agent to the effect that the same should continue in full force and effect and that the new policy was in continuation of that agreement were merely statements as to the legal effect of the written instruments and could not be the foundation of the defense of fraud.

We do not sustain this contention for two reasons, as follows:

■ 1. The finding and conclusion complained of merely presented the question of whether appellant and the insured intended to abandon their insurance contract represented by the Mutual Life & Loan Association policy and the assumption agreement of appellant, and to enter into a new and independent insurance contract represented by the new application and policy of appellant. If the first policy and assumption agreement and the letter explaining the necessity for the execution of the new policy do not conclusively show that the parties intended to continue in force and effect the original insurance and assumption agreement under a reclassified grouping agreement represented by the new policy, then the question was clearly one of fact, which the trial judge found against appellant upon sufficient evidence. In its above-quoted letter to appellee, appellant admitted its liability under the first policy and its assumption agreement. The first policy covered the life of Brown for $1,000, in consideration of the payment of certain assessments or premiums; and the second or new policy did the same thing, in consideration of the payment of larger premiums. The letter, in explaining the necessity for the reclassification evidenced by the new policy, stated in substance and effect that the old contract of insurance would not be "discontinued," if the transfer to the new classification were made by November 15, 1934. And as very cogent evidence that the parties intended that the original insurance contract should be continued in force and effect, the insured was permitted to retain possession of the old policy, the assumption agreement, together with the new policy issued. These facts clearly show that the parties intended to continue in force their original insurance agreement as evidenced by the reclassification under the new policy; and if there were any conflict in the evidence on such issue, then the trial court, trying the case without a jury, determined the question in favor of appellee upon sufficient evidence.

■ 2. If it be assumed that there is a conflict or variance between the clause in the application for the new policy, to the effect that the contract of insurance is entirely in writing and limited to the application and that no oral statements are to bind either party; and the verbal representations of the special representative of appellant, to the effect that he merely came to "reclassify" the insured in a larger age group as evidenced by its more attractive, new, and approved policy, and that the original contract and the assumption agreement were to continue in full force and effect, then appellant is estopped to set up such conflict or variance, because of such fraudulent representations of the special representative of appellant which were relied upon by the insured, and which induced him to enter into the reclassified agreement and to accept the new policy as a continuation of the old insurance agreements. The parol evidence rule "has no application to extrinsic evidence, when used to attack the validity of a contract, as, in this case, by showing fraud in its inception." Marion Machine Foundry & Supply Co. v. Harris Interests, Tex.Civ. App.; 26 S.W.2d 449, 450; Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873.

■ Or, if it be further assumed that such statements of the special representative, that the new policy would not in any manner affect the old obligation of the appellant company but would be a continuation of the old policy and the assumption agreement of appellant, were mere representations as to the legal effect of the written instruments, appellant is still liable, because the rule is settled in Texas and other jurisdictions that misrepresentations of law

constitute actionable misrepresentations of fact, if it appears that they were so intended and understood. The above-detailed facts bring this case clearly within the rule. The special representative told appellee that the old insurance represented by the first policy and assumption agreement would continue in full force and effect under the reclassification of the age group as represented by the new policy. All of said instruments were left with appellee as evidence of the insurance contract. It therefore clearly appears that the special representative, who had specific authority to adjust the matter, intended to represent that the insurance obligation of appellant would continue in force under all the instruments; and that the insured so understood the representations and paid the higher premium due from the members of the reclassified group. Garsee v. Indemnity Co., Tex.Civ.App., 47 S.W.2d 654; Safety Casualty Co. v. McGee, Tex.Civ.App., 93 S.W.2d 519; Moreland v. Atchison, 19 Tex. 303; Holt v. Gordon, Tex.Civ.App., 176 S. W. 902; Schaeffer v. Blanc, Tex.Civ.App., 87 S.W. 745; 26 C.J. pp. 1208, 1209; 12 R. C.L., p. 296; Modern Woodmen v. Harper, 127 Tex. 489, 94 S.W.2d 156; Baker v. Mutual Benev. Ass'n, 115 Tex. 300, 280 S.W. 165.

The trial court found as follows: "The court further finds that the policy of insurance assumed by the defendant was still in full force and effect at the time of the death of insured; or, as an alternative finding, that the policy of insurance issued by the company, the Bankers Life & Loan Association, was issued in lieu of and instead of and as a continuation of such policy. The face value of the policy sued on is $1,000."

 It is contended that the finding that the policy assumed by appellant was in force at the death of the insured is in conflict with the finding that the new policy "was issued in lieu of and instead of" the policy assumed by appellant. To this quoted language must be added the clause, "and as a continuation of such policy." Manifestly, these were alternative and not conflicting findings. The question is also immaterial under the further finding and conclusion supported by sufficient evidence that appellant's special representative represented that the new policy merely reclassified the insured and continued in force the old policy and assumption agreement of appellant.

Our above conclusions also render immaterial the questions of whether there were fraudulent representations by the insured as to his health in the application for the new policy; or whether the provisions of the by-laws of appellant limited liability if death occurred within one year from the date of the policy. These representations and provisions have no application to the old policy and assumption agreement, which were continued in force and effect under the reclassification agreement, and which agreement appellant was estopped to deny.

The judgment of the trial court is affirmed.

Affirmed.